# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 09cr4495 WQH |
| Plaintiff, | ORDER |
| vs. | |
| MARTIN SALDANA-VASQUEZ, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the motion to suppress statements filed by Defendant Martin Saldana-Vasquez. (Doc. # 7-3).

**FACTS**

On October 20, 2009, Defendant applied for admission into the United States through the Calexico, California West Port of Entry. Defendant was the driver of a Ford Windstar. Defendant's sister was a passenger in the vehicle. Defendant was referred to secondary inspection. At secondary inspection, Customs and Border Patrol Officers found eight packages in the vehicle which they believed contained methamphetamine.

After formal arrest, Defendant was interviewed by Immigration and Customs Enforcement agents. The interview was videotaped. The video shows that Defendant initially answered background questions asked by Special Agent Stout in the English language. Special Agent Estrada then informed the Defendant in the Spanish language that he was arrested for

importation of drugs, and that he will be taken to jail. Agent Estrada informed the Defendant of his *Miranda* rights. Defendant stated that he understood each of his rights. Agent Estrada informed the Defendant that the agents were conducting an investigation into the people involved with the importation and that this was his opportunity to tell the agents what happened. Defendant stated that his sister did not have "anything to do with this." (Defendant's Transcript Doc. # 10 at page 27).

> Defendant: She was along for a ride.
> Estrada: And until ... that is determined, we can't let anyone go. Right now both of you are arrested and we have to take you to jail. I mean that's the way the laws are.
> Defendant: Okay.

*Id.* Agent Estrada asked the Defendant to read aloud the statement of rights and the waiver of rights.

> Defendant: I prefer to talk to you [] without signing this because I need an attorney.
> Estrada: Okay, so, you are asking for an attorney–.
> Defendant: Yes...
> Estrada: Okay, so, you're not going to sign this because you're not, you're not waiving your rights.
> Defendant: No.

*Id.* at 28. Agent Estrada ceased questioning the Defendant and informed Agent Stout in the English language that "he wants an attorney." *Id.* at 29. Agent Stout responded to Agent Estrada "Okay. All right." *Id.* The video shows that Agent Estrada then got up from her chair and walked a few steps to an adjacent counter preparing to process the Defendant. After Agent Estrada stood up and walked over to the counter, the Defendant made the following statement in the Spanish language:

> Okay. It would be a little like prolonging the process, right? At the end of the day, I am the, I am the, the accused. Man I can't tell the truth ... It doesn't matter. You ...you aren't going to believe me."

*Id..* at 29. [1] Agent Estrada responded:

---

[1] The Government seeks to admit this statement at trial as inculpatory asserting that the proper translation of the Defendant's statement is "I am the guilty one" not "I am the accused" as reflected in the transcript submitted by the Defendant in Doc.# 10.

| | | |
|---|---|---|
| Estrada: | That, that, that doesn't mean that the process is going to be prolonged because tomorrow when ... you will be given the attorney tomorrow. | |
| Defendant: | Okay. | |
| Estrada: | Okay? Th-, the only thing that happens is that we don't talk to you now. | |
| Defendant: | Okay. I am going to talk to the attorney. | |

*Id.* Defendant was processed and no further questions were asked or statements were made.

On December 16, 2009, the grand jury returned an indictment charging Defendant with knowingly and intentionally importing methamphetamine in violation of 21 U.S.C. § 952 and 960 and knowingly and intentionally possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

## DISCUSSION

**1. Miranda**

Defendant moves the Court to suppress the statement he made after Agent Estrada stood up and walked to the counter asserting a *Miranda* violation. Defendant asserts that the statement at issue was made after he requested counsel and should be suppressed. The Government asserts that the agent ceased all questioning when the Defendant requested counsel and that the statement at issue was spontaneous.

"Once warnings have been given, the subsequent procedure is clear, . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. 436, 473-474 (1966). In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the United States Supreme Court was asked to determine "whether the respondent was 'interrogated' in violation of the standards promulgated in the *Miranda* opinion." *Id.* at 293. Respondent had been identified by a taxicab driver as the man who had robbed him "wielding a sawed-off shotgun." *Id.* at 293. Respondent was taken into custody, informed of his *Miranda* rights, and invoked his *Miranda* right to counsel. Respondent was placed in a police car. While enroute to the central station, police officers engaged in a conversation concerning the "missing shotgun" including a comment by one officer to another officer that "'it would be too bad if a little ... girl would pick up the gun, maybe kill herself.' Respondent then

interrupted the conversation, stating that the officers should turn the car around so he could show them where the gun was located." *Id.* at 295. The Supreme Court explained:

> The issue, ... is whether the respondent was 'interrogated' by the police officers in violation of the respondent's undisputed right under *Miranda* to remain silent until he had consulted with a lawyer. In resolving this issue, we first define the term 'interrogation' under *Miranda* before turning to a consideration of the facts of this case.
>
> The starting point for defining 'interrogation' in this context is, of course, the Court's *Miranda* opinion. There the Court observed that '[b]y custodial interrogation, we mean *questioning* initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Id.*, at 444, 86 S.Ct., at 1612 (emphasis added). This passage and other references throughout the opinion to 'questioning' might suggest that the *Miranda* rules were to apply only to those police interrogation practices that involve express questioning of a defendant while in custody.
>
> We do not, however, construe the *Miranda* opinion so narrowly. The concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self incrimination. *Id.*, at 457-458, 86 S.Ct., at 1619. ...
>
> This is not to say, however, that all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation. As the Court in *Miranda* noted:
>
>> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . .* Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Id.,* at 478, 86 S.Ct., at 1630 (emphasis added).
>
> It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.
>
> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda*

> safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.
>
> Turning to the facts of the present case, we conclude that the respondent was not 'interrogated' within the meaning of *Miranda*. It is undisputed that the first prong of the definition of 'interrogation' was not satisfied, for the conversation between Patrolmen Gleckman and McKenna included no express questioning of the respondent.
>
> ... It is out view [] that the respondent was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him.

446 U.S. at 298-304 (footnotes omitted).

This Court must make a factual determination based upon the evidence whether the statement at issue was the product of interrogation. In this case, the video shows that the Defendant was informed of his *Miranda* rights and invoked his right to counsel. Agent Estrada conducting the interview with the Defendant in the Spanish language acknowledged the Defendant's request for an attorney and ceased all questioning. Agent Estrada then informed the other agent in the English language that "he wants an attorney." Agent Estrada stood up and walked a few steps to an adjacent counter preparing to process the Defendant. These are actions by Agent Estrada normally attendant to an arrest. The actions of the agents created no reason for the Defendant to perceive any compulsion to make a statement. Defendant made a spontaneous statement that was not the product of any words or actions of the agents. The video shows that the statement made by the Defendant was not in response to express questioning or a result of any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the agents should have known was reasonably likely to elicit an incriminating response from the Defendant. The Court concludes that the statement was a volunteered statement. "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

*Miranda*, 440 U.S. at 478 (emphasis added).  The evidence in this record established that the Defendant's request for counsel was complied with by the agents and that no violation of *Miranda* occurred in this case.

**2.  Voluntariness**

"In evaluating voluntariness, the 'test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.' " *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002) (quoting *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1991)).  The Supreme Court has found officers' threats against family members to be coercive.  *See e.g. Lynumn v. State of Illinois*, 372 U.S. 528, 534 (1963)("[P]etitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken for her , is she did not 'cooperate'").

In this case, the Court concludes that there are no facts to support any physical or psychological coercion or improper inducement.  The agent's reference to the Defendant's sister who was a passenger in the car Defendant was driving at the time of his arrest in combination with Defendant's concern for his sister does not amount to a threat or improper coercion by the agents.

**3.  Invocation**

Defendant further asserts that the statement at issue cannot be used against him because the statement itself was an invocation of his right against self-incrimination.  Even if unsolicited, Defendant contends that this statement was a part of his invocation and protected by the Fifth Amendment of the United States Constitution. The Government contends that the content of the statement is not affirmative evidence that he is invoking his right to remain silent.

In *United States v. Bushyhead*, 270 F.3d 905 (9th Cir. 2001), the Court of Appeals held that admission of Bushyhead's statement "I have nothing to say, I'm going to get the death penalty anyway" violated his Fifth Amendment privilege against self-incrimination.

Bushyhead's statement was made as a government agent approached the defendant holding a printed *Miranda* warning statement in his hand. In *Bushyhead,* the Government relying upon *Rhode Island v. Innis,* asserted that Bushyhead "was not silent but rather voluntarily chose to talk to the agent." *Id.* at 912. The Court of Appeals concluded:

> In contrast to the statements in *Innis*, Bushyhead's statement was not an unsolicited confession but the invocation of silence itself. In the post-*Miranda* context, the Court has unequivocally held that a person's statement invoking his right to silence is part of the 'silence' that must be protected. With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted. Just as a prosecutor at trial cannot use the fact of defendant's post-*Miranda* silence, he also cannot use a statement such as "I am not going to say anything," or "I'm not saying anything until my lawyer gets here."

*Id.* at 912-913 (quotations and citations omitted). The Court of Appeals concluded that "[t]he entirety of Bushyhead's statement was an invocation of his right to silence and is therefore protected by the Fifth Amendment privilege against self-incrimination." *Id.*

In this case, the court concludes that the statement of the Defendant at issue is not a further statement of his desire to remain silent until an attorney can be consulted. In response, Agent Estrada assured the Defendant that he would have an opportunity to consult with an attorney the next day. Defendant stated: "Okay" and the agents continued processing his arrest. The Court concludes that Defendant's statement was a volunteered statement referencing only a desire to avoid delay.

## CONCLUSION

IT IS HEREBY ORDERED that the motion to suppress statements filed by Defendant Martin Saldana-Vasquez (Doc. # 7-3) is denied.

DATED: April 15, 2010

**WILLIAM Q. HAYES**
United States District Judge